HARRY SMITH *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

JULY 26, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is an action of the case to recover for personal injuries suffered by the plaintiff in a collision which occurred when the right rear of an automobile driven by him was run into by the left front end of a trolley car of the defendant, then being operated by its motorman. The plaintiff alleged in his declaration that the collision was caused by the negligent operation of the trolley car by the motorman without any contributory negligence by the plaintiff.

At the conclusion of a jury trial a verdict for $14,-251.95 was returned for the plaintiff. Thereafter the defendant duly filed a motion for a new trial, based on the grounds, among others, that the verdict was contrary to the evidence and the weight thereof; that it did not do substantial justice between the parties; and that the damages were excessive.

This motion was sustained by the trial justice, on the grounds that after consideration of the evidence at the trial, on the question of negligence by the motorman in the operation of the trolley car, he was of the settled opinion that such evidence did not fairly preponderate in favor of the plaintiff; that the verdict on the question of liability did not respond to the true merits of the case; and that it did not do substantial justice between the parties. He did not

make a finding, as he should have done, whether in his judgment the damages were excessive and, if so, by how much. The plaintiff filed an exception to this decision of the trial justice and the case is now before us upon his bill of exceptions alone, in which only that exception is stated.

The defendant also filed a bill of exceptions, setting forth not only a great many exceptions taken by it during the trial to rulings by the trial justice as to the admission of evidence but also setting forth an exception to his denial of its motion that it be granted a new trial on the ground that the verdict was grossly excessive. That exception it has not waived but it has waived all its other exceptions.

The pertinent and important testimony of the plaintiff as to how the collision occurred was substantially as follows: On the morning of the collision he was driving his automobile southerly on Cranston street, in order to get to a place of business on the southerly side of Field street, where it comes to Cranston street but does not cross it. On each side of the center of the latter street there was a trolley car track, the one on the westerly side being for use by southbound cars and the one on the easterly side of the center of the street being for northbound cars. When his automobile was moving southerly a little on the west side of the southbound track and was about 200 feet north of Field street, he slowed down, put his head out of the window at his left and looked back to see if any traffic was coming from the north on this track. He then saw a trolley car coming south, about 150 feet back of him and traveling at about 15 to 20 miles per hour, about the speed at which he was traveling. He then swung his automobile over onto the southbound track and drove along it until he got near to the entrance into Field street.

Then he slowed down and pulled over to enter that street. He saw that traffic was coming on the east side of Cranston street in a northerly direction, so he came to a stop, where, he would say, the rear of his automobile was about a foot or a little more to the west of the easterly rail

of the southbound track and the front of it was over the westerly rail of the northbound track, headed practically into Field street. While he was thus stopped, for about a minute, the rear of his automobile was struck by the trolley car, coming from the north, and he was "knocked out." He admitted that he had not looked to the north at any time after he had seen the trolley car 150 feet away.

The plaintiff's brother-in-law, who was riding with him at the time of the accident and who at the time of the trial had a case pending against this defendant for injuries that he had himself suffered in the same accident, corroborated the plaintiff's testimony, except that he said that when the plaintiff's car was struck by the defendant's trolley car, the front wheels of the plaintiff's car were practically over the easterly rail of the northbound track.

He also testified that after the accident he noticed, on the street, tire marks that ran from the position where the plaintiff's automobile was stopped, when it was struck, to the position where it came to a stop after the collision, with its front end just inside Field street. This testimony as to tire marks was corroborated by the testimony of an investigator of the motor vehicle department, who testified that on the next morning after the accident he found two "drag marks", as he called them, made by tires of an automobile and located about opposite the middle of Field street. He testified that one of these started a foot and a half west of the easterly rail of the southbound car track and that the other started between the two tracks.

The defendant's motorman, who at the time of the trial was no longer in its employ because he had served as a motorman for thirty-four years and had been retired upon a pension, testified to the following effect: The accident happened at about 8:30 in the morning. As he was operating the trolley car in a southerly direction on Cranston street and was nearing the place where Field street ran into Cranston street, being about 150 to 200 feet from that place, the car was moving at a speed of about 18 miles per hour.

He then noticed some automobiles passing him on his right and one passing on his left. When he got to the place where Field street opened into Cranston street, the automobile that had passed on his left, and had got about 15 or 20 feet ahead of his car, "bore over on the left" of the front of his car and he had to put his car into reverse and stop it as quickly as he could. It stopped very quickly, but the left front of its step hit the rear right of the automobile, which was apparently going into Field street.

He testified that when his car hit the automobile, the automobile had not stopped, but was moving and continued on over into Field street. He then stopped his car and went over to the automobile. On cross-examination he testified that the automobile, after it passed his trolley car, went along the northbound trolley track. When asked to tell just what part of the highway it traveled on, his answer was as follows: "Well he was travelling on the other car track, on the inbound car track, and then bore over on to the track I am running on, the out bound, and then he turned in and he has part of the rear end of his car on to my track."

He later testified that when the Smith automobile started to veer over to the southbound track, it was 15 or 20 feet away from the trolley car and the plaintiff was probably slowing down to go into Field street, but was still in motion; that when the plaintiff went to turn, the trolley car hit him; and that when the trolley car was 20 or 25 feet back of the northerly side of Field street, the plaintiff's automobile was still in motion and heading in for Field street.

The plaintiff's attorney relies strongly on an exhibit which was filed in evidence at the trial and purports to be a typewritten copy of a statement made by the defendant's motorman to a police officer and which is signed by the motorman and witnessed by the officer. It was evidently drawn up by the officer after talking with the motorman; and there is no good reason to believe that it quotes verbatim the actual language used by the latter.

The language in it which is relied on by the plaintiff's attorney as being contrary to vital testimony by the motorman is as follows: "Just before reaching Field St. I saw an auto being operated south on Cranston St., in the same direction I was operating, passing my car and this auto suddenly turned to the left cutting in front of my car and apparently attempting to make a left turn into Field St. I immediately threw off the electric power and placed the control in reverse speed, which is the quickest way to stop the car. I stopped my car within five or six feet but could not avoid striking this auto in the rear on the right corner of body."

It should be noted that in that statement there is nothing to the effect, as argued strongly by plaintiff, that the automobile passed the trolley car *on the right* of the car or that the automobile turned onto and proceeded along the southbound trolley track and then turned off to the east from in front of the trolley car and came to a stop with only a small portion of its rear above the easterly rail of the southbound track, as testified by the plaintiff and his brother-in-law at the trial. On the contrary, when the above-quoted language of the signed statement is compared with the testimony of the motorman at the trial, it tends strongly to corroborate that testimony and to contradict much of the testimony of the plaintiff and his brother-in-law.

In his rescript, sustaining the defendant's motion for a new trial, the trial justice discussed with fairness and considerable thoroughness the testimony relevant to the question of the liability of the defendant for the plaintiff's injuries and arrived at the conclusion that the evidence upon the question of the negligence of the motorman does not fairly preponderate in favor of the plaintiff and that the verdict of the jury on the question of liability does not respond to the true merits of the case and does not do substantial justice between the parties.

Under such circumstances it is our duty to give great weight to the decision of the trial justice, who has seen and heard the witnesses testify and can therefore determine, much better than we can determine from the pages of the transcript, what testimony is to be believed and what is not, and what effect should be given to the testimony of each witness. After careful consideration we have reached the conclusions that he did not misconceive or overlook any material evidence and that we should not in this case sustain the plaintiff's exception to the decision of the trial justice. Having arrived at that conclusion, we see no reason why we should consider exception 30 of the defendant, *viz.*, "To the failure of said justice to grant defendant's motion for a new trial on the ground that the amount of damages awarded by said verdict is grossly excessive."

The plaintiff's exception is overruled, and the case is remitted to the superior court for a new trial.

*Walter J. Hennessey,* for plaintiff.

*Earl A. Sweeney, Frank J. McGee,* for defendant.